UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Bob Tukin,<br>   Plaintiff,<br><br> v.<br><br>Halsted Financial Services LLC<br><br>   Defendant. | Case No: 1:21-cv-00025 |

**MOTION OF DEFENDANT HALSTED FINANCIAL SERVICES LLC FOR FEES AND SANCTIONS PURSUANT TO 28 U.S.C. § 1927**

  Defendant Halsted Financial Services LLC ("Halsted" or "Defendant") moves the Court to award it fees and costs as sanctions against Plaintiff's attorney David M. Barshay ("Respondent") pursuant to 28 US.C. § 1927, and in support of such motion would respectfully show the following:

**INTRODUCTION**

  1. Defendant seeks an award against Plaintiff's attorney David M. Barshay for all of the fees incurred in this case since the date of Plaintiff's deposition on May 12, 2021, when it became clear that there was no basis for Article III jurisdiction in this case. Regardless of what good faith, if any, Plaintiff's counsel might have possessed at the time this suit was filed, it should have been obvious by the time Defendant answered, and certainly by the end of Plaintiff's deposition that he lacked Article III standing. Nevertheless, Mr. Barshay persisted in prosecuting a claim that his client's testimony could not support.

  2. Furthermore, it should have been clear as of March 30, 2021, that Plaintiff's original Complaint had falsely claimed that Defendant mis-named the

-1-

creditor and that Plaintiff had falsely alleged a failure on the part of Defendant to send the validation notice required by 15 U.S.C. § 1692g(a). Nevertheless, in Plaintiff's First Amended Complaint (ECF 27) filed on September 1, 2021, Plaintiff reasserted those same false claims again.

  3. The conduct giving rise to this motion includes the following:

    a. Respondent made repeated misrepresentations to the Court that Defendant failed to send Plaintiff the notices required by 15 U.S.C. § 1692g(a) and that Defendant misnamed Plaintiff's creditor;

    b. Mr. Barshay repeated those false allegations even after Defendant had produced documents showing that they were false;

    c. Respondent engaged in unreasonable tactics such as noticing Halsted's deposition, requiring Defendant's counsel to travel from Austin, Texas to Chicago, Illinois and prepare the witness, then canceling with less than 24 hours' notice and without ever providing any explanation;

    d. Respondent failed to dismiss the case even after it became evident at Plaintiff's deposition on May 12, 2021 that his suit was frivolous and there was no basis for Article III jurisdiction; and

    e. Respondent intentionally delayed offering to dismiss this matter until after Defendant's counsel incurred the time

>needed to file a Motion for Summary Judgment on January 31, 2022.

Defendant asserts that by such conduct Respondent has vexatiously multiplied these proceedings.

## FACTS

4.  Plaintiff filed his initial Complaint on January 4, 2021. ECF 1. In it, Plaintiff falsely alleged: (1) that Defendant misnamed Plaintiff's creditor; (2) that the letter attached to the Complaint was Halsted's initial communication; and (3) that Halsted had failed to send to Plaintiff the notice required by 15 U.S.C. 1692g(a). ECF 1, ¶¶ 13-23. Halsted filed its answer and attached evidence that these allegations were false. ECF 7-1 and 7-2. During Plaintiff's deposition on May 12, 2021, which Mr. Barshay defended, Plaintiff was confronted with the exhibits to Defendant's answer:

>Tukin, Bob, (Pages 54:2 to 60:22)
>```
>                      54
> 2     Q.   The question is are you able to see
> 3   Exhibit 5, the original answer?
> 4     A.   I am.
> 5     Q.   Have you seen this document before
> 6   today?
> 7     A.   I believe so, yes.
> 8     Q.   Do you know when you first saw it?
> 9     A.   I believe a few weeks ago.
>10     Q.   So I'm going to scroll down through
>11   Exhibit 5.  Attached to the answer is a document
>12   labeled Exhibit A.  This is part of Exhibit 5 to
>13   the deposition.
>14          Do you recall looking at this Exhibit A?
>15     A.   I do.
>16     Q.   You see that it is a letter dated
>17   September 20, 2019?
>18     A.   I do.
>19     Q.   And if we scroll down to where the
>```

20 addressee is listed, that is your name and your
21 address at the time; correct?
22    A.   That is correct.
23    Q.   You resided at that address at that
24 time?

                55

1    A.   Correct.
2    Q.   And if Halsted Financial testifies that
3 this letter was deposited in the mail, do you have
4 any reason to believe that that statement would be
5 false?
6    A.   I do not.
7    Q.   Is it possible that you received this
8 letter and forgot about it?
9    A.   It's possible.
10   Q.   Now, if you received this letter, it
11 certainly is a very different letter than the one
12 attached to your complaint; correct?
13   MR. BARSHAY:  Objection as to form.
14      You can answer.
15 BY THE WITNESS:
16   A.   It does look like a different letter.
17   MR. BARSHAY:  Manny, just -- in general, if I
18 object based on form, Bob, you can still answer
19 after the objection.  You don't need to wait for me
20 to tell you that it's okay to answer.  Okay?
21 That's just -- you know, lawyers have to make
22 certain objections that don't necessarily bear on
23 the requirement that you answer the question.  So
24 unless I tell you not to answer, you can answer.

                56

1 Okay?
2   THE WITNESS:  Okay.
3   MR. NEWBURGER:  And, David, let me express my
4 appreciation for you making your objections in
5 accordance with the rules and limiting it to
6 objections of form or responsiveness.  I do
7 appreciate that.  I try to do my depositions in the
8 same way.
9   MR. BARSHAY:  I appreciate the kind words.
10 BY MR. NEWBURGER:
11   Q.   Let me scroll down, if I may, Mr. Tukin,
12 and let us look at Exhibit B to the answer.
13      Do you recall seeing Exhibit B before?
14   A.   I do not.
15   Q.   Do you see the Exhibit B is a bill of

16  sale from Sterling Jewelers to the entity that has
17  been described in Halsted's letters as the owner of
18  the account?
19    A.   To one of the owners.
20    Q.   What other owner is described in their
21  letter?
22    A.   Well, it mentions owners, plural.
23    Q.   We'll get to that. Right now, do you
24  see the letter -- the heading that's identified as

                57

1  the current creditor, do you see this is a bill of
2  sale to that entity?
3    A.   To SGP Acquisition, not to SGP Co, I do
4  not.
5    Q.   The acquisition trust is shown on here;
6  correct?
7    A.   CVI SGP Acquisition Trust in the bill --
8  under the bill of sale as the main underlying
9  subject, I do see that. I do not see CVI SGP-CO
10  Acquisition Trust in that subject.
11    Q.   Okay. Do you have any reason to believe
12  that on the date that Halsted's letter that is
13  Exhibit A was sent -- let's go back up -- this
14  September 2019 letter, do you have any reason to
15  believe that any entity other than CVI SGP
16  Acquisition Trust was the owner of the account?
17    A.   I do not.
18    Q.   And, in fact, that is who the letter
19  says had placed the account for collections;
20  correct?
21    A.   That is correct.
22    Q.   And if we go over to your complaint, if
23  we look at the letter attached to that, who does it
24  say is the party that is the creditor?

                58

1    MR. BARSHAY: Objection as to form.
2  BY MR. NEWBURGER:
3    Q.   What entity's identified there?
4    A.   CVI SGP Acquisition Trust.
5    Q.   And, again, that's the same entity that
6  was on the bill of sale that you just saw as
7  Exhibit B to the answer; correct?
8    A.   That is correct.
9    Q.   Do you have any reason to believe that
10  on the date of the letter that is -- that is
11  attached to your complaint any company other than

12  CVI SGP Acquisition Trust owned your account?
13      A.  Can you repeat the question, please?
14      Q.  Do you have any reason to believe that
15  on the date of the letter that we're looking at
16  now, the exhibit to your complaint, that any entity
17  other than CVI SGP Acquisition Trust owned your
18  account?
19      A.  I do not.
20      Q.  Let's turn back to Exhibit 5. Now, this
21  letter identified the original creditor; right?
22      A.  That is correct.
23      Q.  And what's more, you see where it
24  identifies the current creditor?

                        59
 1      A.  That's correct.
 2      Q.  And you see in the paragraph below where
 3  the underlining -- underlined website is, it tells
 4  you that the communication was from a debt
 5  collector?
 6      A.  I do.
 7      Q.  And told you that this was an attempt to
 8  collect a debt and that any information obtained
 9  would be used for that purpose, didn't it?
10      A.  It appears that way, yes.
11      Q.  And the letter notified you that unless
12  you notified Halsted Financial within 30 days after
13  receiving the letter that you disputed the validity
14  of the debtor, any portion of it, that they would
15  assume the debt is valid, doesn't it?
16      A.  That is correct.
17      Q.  And it notifies you that if you inform
18  them in writing within 30 days after receiving the
19  letter that you disputed all or part of the debt,
20  they'd provide you with verification of the debt;
21  correct?
22      A.  That is correct.
23      Q.  And it told you that if you notified
24  them in writing within that same 30-day period,

                        60
 1  they'd provide you with the name and address of the
 2  original creditor if different from the current
 3  creditor; correct?
 4      A.  That is correct.
 5      Q.  Is there any moment in time when you
 6  ever spoke to anyone at Halsted Financial?
 7      A.  I don't believe so, no.

```
 8     Q.   Is there any moment in time when you
 9  ever wrote to anyone at Halsted Financial?
10     A.   I don't believe so, no.
11     Q.   So certainly you did not dispute this
12  account to Halsted?
13     MR. BARSHAY:  Objection as to form.
14         You can answer.
15  BY THE WITNESS:
16     A.   That is correct.
17  BY MR. NEWBURGER:
18     Q.   Neither orally nor in writing; correct?
19     A.   Correct.
20     Q.   And not through any agent or
21  representative; correct?
22     A.   Correct.
```

     5.     In addition, on March 30, 2021, Halsted served on Plaintiff its initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). Newburger Decl. ¶ 4. The documents produced with those disclosures included Halsted's initial notice letter dated September 20, 2019. *Id.*

     6.     Notwithstanding both the exhibits to Defendant's answer and Plaintiff's deposition testimony, Mr. Barshay filed Plaintiff's First Amended Complaint in September 2021. In that pleading he repeated the same false allegations regarding the initial letter to Plaintiff and the identity of the creditor. ECF No. 27, ¶¶ 13-30. This necessitated both having to answer the amended complaint and having to move for summary judgment.

     7.     In addition to the conduct described above, in June 2021, Mr. Barshay noticed the deposition of Defendant Halsted to be taken on July 9, 2021 at 12 p.m. Eastern Standard Time. Newburger Decl., ¶ 5. Less than 24 hours prior to the scheduled deposition, Mr. Barshay emailed counsel for Defendant to cancel the deposition without offering any explanation. *Id.* At that point, Mr.

Newburger had traveled to Chicago from Austin, Texas and taken up over half a day with the witness and Halsted's General Counsel in order to prepare the witness for the deposition. *Id.* Mr. Barshay has never provided any explanation for the cancellation. Furthermore, it cannot even be said that the time and expense were useful for when Halsted was ultimately deposed, as Mr. Barshay did not ever reschedule the deposition. *Id.* Thus, Mr. Barshay caused Halsted to incur the expense of flying in its defense counsel to prepare for a deposition on which Plaintiff never attempted to proceed. Mr. Barshay's actions drove up the costs of Halsted's defense in a case that, as the Court has ruled, Plaintiff had no standing to bring.

8.  Respondent then continued to prosecute the demonstratively false FDCPA claims in this case, even though it became clear at Plaintiff's deposition in May 2021 that there was no basis for Article III jurisdiction. Newburger Decl., ¶¶ 6 and 9. This continued and unwarranted multiplication of litigation forced Defendant to prepare and file a motion for summary judgment in January 2022, which established as a factual matter that: (a) Halsted did, in fact, send to Plaintiff the notice required by 15 U.S.C. € 1692g(a) (ECF 35-3, pp. 1 and 12); (b) the letter attached to Plaintiff's Complaints was not Halsted's initial communication to Plaintiff (ECF 35-3, pp. 1 and 15); (c) Halsted had correctly named Plaintiff's creditor (ECF 36-1, pp. 1-2); (d) Plaintiff suffered no harm as a result of the conduct of which he complained (ECF No. 35, ¶ 46); (e) all that Plaintiff could identify was a mere risk of harm (ECF No. 35, ¶ 47); (f) Plaintiff could identify in his deposition no actual damages that he was seeking in this

case (ECF No. 35, ¶ 48); and (g) even if Plaintiff had any privacy damages, he could not identify who caused them (ECF No. 35, ¶ 49). Furthermore, Plaintiff's dealings with Defendant substantially benefitted him (ECF No. 35, ¶ 50).

9. When Respondent saw that Defendant filed the summary judgment motion, he offered to dismiss the case. Newburger Decl., ¶ 9. In fact, the offer to dismiss was made within minutes of the filing of the motion and before all the supporting evidence was filed, showing that Mr. Barshay knew that there was no jurisdictional basis for this suit. *Id.* Plaintiff filed a response to the motion stating, "Plaintiff does not believe…that he is able to provide a good faith basis to oppose Defendant's motion that the Court lacks Article III subject matter jurisdiction." ECF No. 39. While it took Respondent more than 9 months after Plaintiff's deposition to request dismissal, it took him only 10 minutes after seeing that Defendant's brief had been filed to offer to dismiss the case. Newburger Decl., ¶ 9; ECF No. 39. Since no new facts and no new discovery occurred following Plaintiff's deposition, Mr. Barshay cannot claim to have based the decision to dismiss on facts discovered after he amended the pleadings.

## ARGUMENT

10. 28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

11. The Seventh Circuit has explained that:

> [A] court has discretion to impose § 1927 sanctions when an attorney has acted in an "objectively unreasonable manner" by engaging in "serious and studied disregard for the orderly process of justice," *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994); pursued a claim that is "without a plausible legal or factual basis and lacking in justification," *id.*; or "pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound," *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989).

*Jolly Grp., Ltd. v. Medline Indus, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). Each of these concerns exist in this case.

12. It is not necessary to show conscious impropriety or subjective bad faith in order to be entitled to attorney's fees under Section 1927. "A lawyer's subjective bad faith is a sufficient, but not necessary, condition for § 1927 sanctions; objective bad faith is enough." *In re Lisse*, 921 F.3d 629, 641 (7th Cir. 2019) (citing *Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 659 (7th Cir. 2017). "The standard for objective bad faith does not require a finding of malice or ill will; reckless indifference to the law will qualify." *Dal Pozzo v. Basic Mach. Co.*, 463 F. 3d 609, 614 (7th Cir. 2006) (citing *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985)). Nevertheless, in this case the Court could easily find (and should) find subjective bad faith.

13. Section 1927 sanctions are intended "to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005). "Because trial judges are best positioned to detect bad faith litigation conduct, they possess broad discretion in exercising the § 1927 power." *Lisse*,

921 F.3d at 641. Halsted asks that the Court make appropriate findings that Respondent's conduct was an intentional and malicious injury to Defendant.

14. There is no doubt that sanctions are warranted. Section 1927 sanctions may be imposed for claims without support. "Under § 1927, sanctions for filing a baseless claim properly may be imposed where those claims are not supported by the facts." *Walter v. Fiorenzo*, 840 F.2d 427, 435 (7th Cir. 1988). The Seventh Circuit "has upheld section 1927 sanctions ... [when] counsel raised baseless claims despite notice of the frivolous nature of these claims…" *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 2003) (collecting cases). Further, "[s]ection 1927 imposes a continuing duty on counsel to dismiss claims that are no longer viable." *Burda v. M. Ecker Co.*, 2 F.3d 769, 778 (7th Cir. 1993); *Walter*, 840 F.2d at 433-36. Respondent's conduct clearly resulted in unnecessary litigation of a claim that has no merit.

15. Respondent's conduct in this case, from inception until now, is replete with instances of bad faith and evidence of a meritless claim:

- In filing both the Complaint and First Amended Complaint in this case, Respondent made the false assertion that Plaintiff had suffered actual damages. As shown by the summary judgment evidence, no such damages existed. Even if Respondent initially believed that they existed at the time of the original Complaint, he certainly knew by the time he filed the First Amended Complaint that there were no such damages, as his client had been deposed months earlier.

- Respondent made the false assertions in the First Amended Complaint that: (a) Halsted had failed to send the notice required by 15 U.S.C. § 1692g(a) and that it had misnamed the creditor. He made those false claims despite having already been presented with evidence to the contrary in the form of attachments to Defendant's answer. Plaintiff's deposition testimony, and Defendant's initial Rule 26(a)(1) disclosures months before the First Amended Complaint was filed.
- Mr. Barshay engaged in the abusive discovery tactic of canceling Halsted's deposition with less than 24 hours' notice and no explanation.[1]
- Mr. Barshay continued to pursue the case after it became evident at Plaintiff's deposition on May 12, 2021 that there was no basis for Article III jurisdiction. Respondent offered to dismiss the case only after Defendant's counsel filed a Motion for Summary Judgment on January 31, 2022. Respondent's offer came within minutes of that filing and before any supporting evidence had even been filed. This is further evidence that he pursued this meritless case without any real intention of trying the case.

16. Respondent is directly responsible for the unreasonable litigation tactics employed in this action, and he should be held accountable for

---

[1] Even if there was a good reason for the cancellation, it has never been communicated to Halsted's counsel. Furthermore, any such alleged reason is suspect, as Mr. Barshay never made any effort to reschedule the deposition, calling into question whether he ever intended to proceed.

vexatiously multiplying these proceedings. All fees incurred in this action following Defendant's answer (and certainly following the deposition of Plaintiff Tukin) constitute "excess" attorney's fees under Section 1927. The Seventh Circuit has long been critical of the misuse of litigation as a "predatory instrument":

> Suits are easy to file and hard to defend. Litigation gives lawyers opportunities to impose on their adversaries costs much greater than they impose on their own clients. The greater the disparity, the more litigation becomes a predatory instrument rather than a method of resolving honest disputes.

*In re TCI, Ltd.*, 769 F.2d 441, 446 (7th Cir. 1985). It has long upheld the remedy: Section 1927. "When an attorney recklessly creates needless costs the other side is entitled to relief." *Id*

17. Respondent's conduct demonstrates both subjective and objective bad faith, as well as the vexatious and unreasonable multiplication of the proceedings. Respondent's failure to investigate the merit of Plaintiff's claims or to consider the evidence before him is troubling. Even more alarming is Respondent's refusal to dismiss the action until minutes after Defendant filed a Motion for Summary Judgment.

18. Sanctions against attorneys should be imposed rarely. However, the pattern of vexatious behavior described above has multiplied this litigation from at least the date of May 12, 2021 through Respondent's offer to dismiss the case. Halsted requests that it be awarded all of the fees, costs, and expenses incurred in this case from May 12, 2021 through the ruling on this motion, and appeal.

19. Finally, Halsted asks the Court to consider the duties imposed upon attorneys not to make false representations to a tribunal. Plaintiff's counsel was certainly on notice that the allegations in the original Complaint were false at the time they were made. Nevertheless, he acted with either knowledge of the falsity or reckless disregard for the truth in filing the First Amended Complaint. That conduct cost Halsted the fees to answer the FAC and to move for summary judgment. Halsted should not have to bear those fees.

WHEREFORE, Defendant prays that the Court make a specific finding that Respondent has multiplied the proceedings in this case unreasonably and vexatiously and award to Defendant all of the fees, costs, and expenses incurred as a result of the conduct described above. Defendant further prays that the Court specifically find that such conduct was an intentional and malicious injury. Defendant further prays for all such other and further relief, at law or in equity, to which it may be justly entitled.

DATED this 25th day of July 2022.

                                        Respectfully submitted,

                              /s/ <u>Manuel H. Newburger</u>
                                  Manuel H. Newburger
                                  Barron & Newburger, P.C.
                                  7320 N. MoPac Expy., Suite 400
                                  Austin, Texas 78731
                                  Tel: (512) 649-4022 (Direct)
                                  Fax: (512) 279-0310
                                  mnewburger@bn-lawyers.com

                                  ATTORNEY FOR DEFENDANT
                                  HALSTED FINANCIAL SERVICES LLC

**CERTIFICATE OF SERVICE**

A true copy of the foregoing Motion was served on the persons on the service list below by email on the 25th day of July, 2022.

/s/ Manuel H. Newburger
Manuel H. Newburger

**SERVICE LIST**

David M. Barshay, Esquire
BARSHAY, RIZZO & LOPEZ, PLLC
445 Broadhollow Road | Suite CL18
Melville, New York 11747
P. (631) 210-7272
F. (516) 706-5055
dbarshay@brlfirm.com

*Attorneys for Plaintiff*