**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BOB TUKIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21-cv-00025 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| HALSTED FINANCIAL SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Bob Tukin sued Defendant Halsted Financial Services, LLC ("Halsted"), claiming that it violated several provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., when it mailed him a debt collection letter. Halsted filed a motion for summary judgment, arguing that Tukin lacked Article III standing. The Court agreed, granted Halsted's motion, and dismissed the case. Halsted subsequently filed a motion for sanctions against Tukin's counsel, David Barshay ("Attorney Barshay"), pursuant to 28 U.S.C. § 1927, based on alleged misrepresentations in the First Amended Complaint ("FAC"), unreasonable discovery tactics, and his refusal to offer to voluntarily dismiss the case until after Halsted's summary judgment motion. (Dkt. No. 45.) Tukin responded by filing cross-motions for sanctions against Halsted and its counsel, Manuel Newburger ("Attorney Newburger"), pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, based on the factual assertions and legal arguments in Halsted's motion for sanctions. (Dkt. Nos. 58, 60.) For the reasons that follow, the Court now denies Halsted's and Tukin's motions.

## BACKGROUND

In January 2021, Tukin sued Halsted, a debt collections company, claiming that Halsted violated the FDCPA when it sent him a debt collection letter in January 2020. (Compl., Dkt. No. 1.) In Count I of his complaint, Tukin claimed that Halsted falsely and misleadingly listed the current owner of Tukin's debt in the January 2020 letter, in violation of § 1692e of the FDCPA. (*Id.* ¶¶ 19–22, 41–45.) Count II consisted of Tukin's claim that the January 2020 letter omitted statutorily required notices for initial communications between a debt collector and consumer, such as notice of Tukin's right to dispute the debt, in violation of § 1692g of the FDCPA. (*Id.* ¶¶ 23–28, 46–50.) In Count III, Tukin alleged that a code containing his sensitive and identifying information was visible on the outside of the envelope in which the January 2020 letter was sent, in violation of § 1692f of the FDCPA. (*Id.* ¶¶ 29, 51–58.) And in Count IV, Tukin claimed that Halsted communicated with unauthorized third parties regarding his debt, in violation of § 1692c(b) of the FDCPA. (*Id.* ¶¶ 59–62.)

Halsted answered the original complaint in February 2021 and served its Federal Rule of Civil Procedure 26(a)(1) initial disclosures in March 2021. Along with those documents, Halsted provided Tukin with evidence that it believed refuted Tukin's allegations that it had misnamed the current creditor and failed to provide statutorily required notices in its initial communications letter. (*See* Answer, Dkt. No. 7; Def.'s Mot. for Sanctions ("DMS"), Ex. B, Halsted's Initial Disclosures, Dkt. No. 45-3.) Halsted also took Tukin's deposition in May 2021, during which Attorney Newburger questioned Tukin about his alleged damages. (*See* DMS, Ex. A, Tukin's Dep., Dkt. No. 45-2.) According to Halsted, Tukin's deposition testimony confirmed that his suit was frivolous and that he lacked Article III standing.

In addition, Attorney Barshay never deposed a corporate representative of Halsted. (*See* DMS, Ex. 1, First Newburger Decl. ¶ 5, Dkt. No. 45-1; First Barshay Decl. ¶¶ 17–19, Dkt No.

53.) Instead, Attorney Barshay scheduled a deposition of Halsted's representative for July 9, 2021, and then cancelled the deposition with less than a day's notice and without any explanation. (First Newburger Decl. ¶ 5; First Barshay Decl. ¶¶ 17–19.) By the time Attorney Barshay cancelled the deposition, Attorney Newburger had already travelled from Austin, Texas to Chicago, Illinois for the deposition and had spent time preparing Halsted's representative. (First Newburger Decl. ¶ 5.)

In September 2021, Tukin filed the FAC, claiming injuries from Halsted's conduct and asserting the same claims as in his original complaint. (*See* FAC, Dkt. No. 27.) After Halsted answered the FAC in September 2021, it moved for partial summary judgment in January 2022 based on Tukin's lack of standing. (Dkt. Nos. 27, 33.) In response to Halsted's motion, Tukin immediately notified Halsted that he was willing to voluntarily dismiss the case without prejudice. (DMS, Ex. E, January 2021 Emails at 6, Dkt. No. 45-6.) Moreover, Tukin conceded to the Court that he had no good-faith basis to challenge the motion based on the current caselaw regarding standing in this Circuit. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 1, Dkt. No. 39.) Halsted, however, desired an order from the Court finding as matter of law that Tukin lacked standing. (Def.'s Reply in Supp. of Summ. J. at 1, Dkt. No. 40.) As Halsted declined to withdraw its summary judgment motion, the Court considered the motion as unopposed and its accompanying statement of facts as undisputed; the Court subsequently granted Halsted's motion for summary judgment and dismissed the case without prejudice for lack of standing. (7/12/2022 Order-Statement at 1, Dkt. No. 42.)

Shortly thereafter, Halsted filed its motion for sanctions against Attorney Barshay pursuant to 28 U.S.C. § 1927, citing Barshay's continued prosecution of Tukin's claim after it had become evident that Tukin lacked standing and the fact that some of his allegations were

false. Halsted primarily seeks an award of attorneys' fees and costs incurred after the date of

Tukin's deposition on May 12, 2021. (DMS ¶¶ 1, 18.) After Halsted filed its motion, Tukin filed

his own motions seeking Rule 11 sanctions against Halsted and Attorney Newburger, and

sanctions under § 1927 against Newburger—all based on the purportedly meritless legal

contentions and misrepresentations in Halsted's sanctions motion. All three motions have been

exhaustively briefed by the parties.

## DISCUSSION

### I.     Evidentiary Objections

As an initial matter, the Court addresses the parties' myriad objections to evidence

offered in support of their respective positions.[1]

Halsted first objects to Tukin's and Attorney Barshay's declarations submitted with

Tukin's response in opposition to Halsted's motion for sanctions (Pl.'s Resp. Br., Tukin Decl.,

Dkt. No. 52; First Barshay Decl.). Halsted vaguely argues that the declarations contradict

Tukin's deposition testimony and the Court's findings in its summary judgment ruling. Yet in its

objection, Halsted fails to identify any portion of the declarations that it believes to contradict

Tukin's deposition testimony or the Court's ruling. As such, the Court overrules this objection.

Next, Halsted challenges Attorney Barshay's declaration filed with Tukin's reply brief in

support of Tukin's motions for sanctions (Third Barshay Decl., Dkt. No. 68). Halsted contends,

among other things, that the declaration impermissibly attempts to introduce new evidence to

support conclusory and undeveloped arguments in Tukin's opening brief. In its objection,

Halsted attaches a redlined version of Attorney Barshay's declaration, in which it confusingly

---

[1] The sheer number of objections reflects how contentious this litigation became, so much so that the Court prohibited the parties from filing any further submissions absent leave of court. (2/23/2023 Minute Entry, Dkt. No. 73.)

strikes out the parts of the declaration to which it objects without any further explanation. (Halsted's Objs. to Third Barshay Decl., Ex. A, Redlined Barshay Decl., Dkt. No. 70-1.) This objection is puzzling considering that many of the documents cited as evidence were already in the record from the briefs relating to Halsted's motion for sanctions. Indeed, Halsted references some of the same documents as evidence in its own response to Tukin's motions for sanctions, including Halsted's initial disclosures, Tukin's deposition transcript, Tukin's notice of deposition to Halsted, and Barshay's email records in July 2021 and January 2022. (*See* Def.'s Resp. Br. at 1–2, Dkt. No. 65.) The other documents to which Halsted objects are Exhibits 18, 19, and 20, which consist of email communications between Attorney Barshay and Attorney Arthur Sanders—a shareholder at Attorney Newburger's law firm. But those documents are directly responsive to statements in Sanders's declaration about his contact with Attorney Barshay concerning Halsted's motion for sanctions. (*See* Def.'s Resp. Brief, Ex. 5, Sanders Decl. ¶ 4, Dkt. No 65-5.) Accordingly, the Court overrules Halsted's objections to Barshay's third declaration as well.[2]

---

[2] Halsted raises several other objections to Barshay's third declaration. First, Halsted asserts that the declaration seeks to confirm, without personal knowledge, facts that Tukin alleges in his declaration. But Barshay emphasizes in the declaration that his statement of facts is based both on his personal knowledge and a review of documents in the record, including Tukin's declaration, Tukin's deposition testimony, and complaint. (Third Barshay Decl. ¶ 2.) Second, Halsted claims that Barshay mischaracterizes Tukin's deposition testimony by ignoring that Tukin admitted that it was conceivable that he had received but forgotten Halsted's original debt collection letter from September 2019. The Court has reviewed Tukin's deposition testimony and does not view Tukin's and Barshay's statements that the January 2020 letter was the only letter that Tukin received from Halsted as contradicting Tukin's deposition testimony. Third, Halsted contends that any testimony regarding whether Tukin received Halsted's September 2019 letter should be stricken as irrelevant. But whether Tukin told Barshay that he did not receive the letter is relevant to whether Barshay made misrepresentations in the filing of the FAC because Halsted's proffered evidence at the time did not conclusively establish that it sent the letter. Fourth, Halsted objects to Barshay's inclusion of his legal and professional credentials in the declaration. Ultimately, the credentials section was irrelevant to the Court's analysis, so it declines to strike this section.

Turning to Tukin's objections, Tukin objects to the declaration of Attorney David Phillips (Dkt. No. 65-1), a fellow FDCPA attorney, and Attorney Sanders's amended declaration (Dkt. No. 71). Both declarations were submitted with Halsted's response in opposition to Tukin's motions for sanctions. With respect to Phillips's declaration, Tukin objects on relevancy grounds. And Tukin objects to Sanders's amended declaration on the grounds that the declaration is procedurally improper, meritless, and contains false allegations. Those declarations were not material to the Court's conclusions as they re-state information already in the record, opine on whether Halsted had a good-faith basis to seek sanctions against Barshay, and describe Barshay's alleged conduct in non-FDCPA cases. The Court declines to strike the declarations nor does it take a position on the alleged falsities in Sanders's amended declaration.[3]

## II.      Halsted's Motion for § 1927 Sanctions

Moving to the merits, the Court first considers Halsted's motion for sanctions against Attorney Barshay pursuant to 28 U.S.C. § 1927.

Under § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. A district court may impose § 1927 sanctions "when an attorney has acted in an 'objectively unreasonable manner' by engaging in 'serious and studied disregard for the orderly process of justice,'" pursued a claim "without a plausible legal or factual basis and lacking in justification," or

---

[3] While Tukin does not formally object to the declaration of Brian Glass (Dkt. No. 65-3), Halsted's general counsel, he argues that Glass offers irrelevant reasons for the Court to sanction Barshay. The Court agrees that the part of Glass's declaration speculating on Barshay's motives in seeking sanctions and recounting details about interactions between Halsted and Barshay in other cases (Glass Decl. ¶ 7) is irrelevant. Hence, the Court disregards that portion of the declaration. Nevertheless, the Court will consider the relevant parts of Glass's declaration, such as his description of the relationship between Halsted and Resurgent Capital Services, LLC (*see* Glass Decl. ¶ 10).

"pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (citations omitted). Further, attorneys have "a continuing duty . . . to dismiss claims that are no longer viable." *Id.* (internal quotation marks omitted).

Here, Halsted argues that sanctions are warranted against Attorney Barshay for three main reasons: (1) Attorney Barshay made repeated misrepresentations to the Court about Halsted's initial communication letter to Tukin, (2) Attorney Barshay refused to dismiss the case despite Tukin's deposition testimony confirming that he lacked standing for his claims, and (3) Attorney Barshay engaged in unreasonable discovery tactics by noticing Halsted's deposition and then cancelling the deposition on short notice. The Court addresses each criticism in turn.

### A.     Alleged Misrepresentations Regarding Halsted's Initial Letter

Halsted contends that Attorney Barshay falsely asserted in Counts I and II of the FAC that Halsted failed to send Tukin the statutorily required notice and misnamed the current creditor in its initial letter. The dispute turns on whether Halsted's initial letter was the September 2019 letter or the January 2020 letter. Notably, this Court never addressed the merits of Tukin's claims or otherwise resolved the parties' factual disputes, since the standing issue was dispositive.

Section 1692e of the FDCPA bars debt collectors from using false, deceptive, or misleading representations or means in connection with their collection of debts. 15 U.S.C. § 1692e. That provision further requires that debt collectors provide specific information in their initial communication or subsequent written notice to consumers, including the name of the current creditor and the consumer's ability to dispute the validity of the debt. *See* 15 U.S.C. § 1692g. In Count I, Tukin alleged that the January 2020 letter—which was the initial

communication he received from Halsted—falsely and misleadingly listed the current owner of his debt in violation of § 1692e. (FAC ¶¶ 20, 30, 65–74.) Meanwhile, Count II alleged that the January 2020 letter omitted the statutorily required notices for initial communications between a debt collector and consumer, in violation of § 1692g. (*Id.* ¶¶ 31–37, 75–80.)

With respect to Count I, Halsted points out that, prior to Tukin's filing of the FAC, Halsted provided him with copies of the chain of title for his debt along with its answer and initial disclosures and during his deposition. According to Halsted, the chain-of-title document— titled "Bill of Sale: Sterling Jewelers, Inc. to CVI SGP Acquisition Trust" and dated March 11, 2019—demonstrates that Halsted correctly named CVI SGP Acquisition Trust as Tukin's current creditor. Halsted also focuses on Tukin's deposition testimony, where upon viewing the March 2019 bill of sale, he stated that he had no reason to believe that CVI SGP Acquisition Trust was not the owner of his account on the date of the letters. (*See* Tukin's Dep. 57:11–59:19.)

The Court disagrees that the 2019 bill of sale definitively establishes that CVI SGP Acquisition Trust was the current creditor or owner of Tukin's account such as to warrant a finding that Attorney Barshay made a sanctionable misrepresentation by pursuing the § 1692e claim. The bill of sale provides that Sterling Jewelers, Inc. ("Sterling Jewelers") transferred to CVI SGP Acquisition Trust accounts identified in the attached notification file. (Halsted's Initial Disclosures at 7.) Yet the notification file is an electronic file labelled "GFS-RESURGENT-SUPP-20190306-5315.txt" and "GFS-RESURGENT-SUPP-20190307-5316.txt," rather than a list of specific accounts. (*See* Halsted's Initial Disclosures at 8.) And Barshay asserts that neither the notification file nor the list of the accounts in the file were ever provided to him. (First Barshay Decl. ¶ 9.) Halsted offers no rebuttal to this explanation.

Moreover, the names of the electronic files comprising the notification file are different in the exhibit attached to Halsted's answer from those listed in the exhibit attached to Halsted's initial disclosures. While the electronic files are labeled "GFS-RESURGENT-SUPP-20190306-5315.txt" and "GFS-RESURGENT-SUPP-20190307-5316.txt" in the initial disclosures, in the exhibit attached to Halsted's answer, they are listed as "GFS-CACH-BKP-SUPPLEMENTAL-20190209.TXT" and "GFS-CACH-BKP-SUPPLEMENTAL-20190208.TXT." (Pl.'s Resp. Br., Ex. 9, Answer-Notification File at 2, Dkt. No. 53-9.) Tukin and Attorney Barshay assert that, among other things, the inconsistency in the name of the notification file led them to question the accuracy of the named creditor in the January 2020 letter. (Tukin Decl. ¶¶ 15–17; First Barshay Decl. ¶¶ 15–16.)

In its briefing concerning Tukin's motions for sanctions, Halsted offers the declaration of Katherine Heatherly, a paralegal at Resurgent Capital Services, L.P. ("Resurgent Capital"), to discuss the variation in file names. (*See* Def.'s Resp. Br., Ex. 4, Heatherly Decl., Dkt. No. 65-4.) Heatherly explains that the file designations originated from the servicing arrangement between CVI SGP Acquisition Trust and Resurgent Capital, under which Resurgent Capital acted as the servicer of the debt portfolios acquired from Sterling Jewelers. (Heatherly Decl. ¶¶ 7, 13.) As a result, she explains, the file names were used interchangeably. (*Id.*) Nevertheless, this new information from Heatherly does not speak to the question of whether it was reasonable for Attorney Barshay to claim that Halsted misnamed Tukin's current creditor based on the evidence that Halsted had produced at the time.

Although Halsted also included in its initial disclosures a March 2021 bill of sale from CVI SGP Acquisition Trust to Resurgent Acquisitions LLC that lists Tukin's original account with Sterling Jewelers as one of the transferred accounts (Halsted's Initial Disclosures at 9–24),

that Halsted did not provide the list of accounts in the 2019 notification file to Tukin plausibly

gave Attorney Barshay a basis to proceed with the claim and investigation. Halsted further offers

the testimony of Kim Hannigan, an authorized representative of Resurgent Acquisitions, to show

that CVI SGP Acquisition Trust acquired Tukin's account from Sterling Jewelers in March 2019,

and thus Halsted named the correct creditor. But Hannigan's declaration was not introduced as

evidence in this matter until Halsted's summary judgment motion in January 2022. (*See*

Hannigan Decl. at 1, Dkt. No. 36-1.) The Court appreciates Halsted's frustration that Barshay did

not investigate the creditor's identity further; however, the Court cannot conclude that Halsted's

evidence was so conclusive at the time Attorney Barshay filed the FAC that his conduct warrants

sanctions. *Cf. Thomas ex rel. Phillips v. Ill. Dep't of Hum. Servs.*, No. 20-CV-03498, 2021 WL

4439417, at *11 (N.D. Ill. Sept. 28, 2021) (refusing to impose sanctions against the plaintiff's

counsel for pursuing claims against two entities that the plaintiff alleged were joint partners

because the defendant's proffered documents did not conclusively establish a lack of legal

relationship between the two entities).

More importantly, Tukin's § 1692e claim encompassed more than just Halsted allegedly

misnaming the current creditor. He also alleged that the January 2020 letter identified one

current creditor (CVI SGP Acquisition Trust), but the privacy notice included with the letter

named two owners of his debt (CVI SGP Acquisition Trust and CVI SGP-CO Acquisition Trust)

and his credit report listed RCS/Carval Investors as the current creditor. (FAC ¶¶ 18, 21, 40–41,

67–69.) Tukin further asserted that the variation among the privacy notice, letter, and credit

report indicated that one of the documents was false, and that an unsophisticated consumer

would be confused and misled about the current creditor's identity. (*Id.* ¶¶ 70–72.) In his

deposition testimony, Tukin also stated that he was unaware of any corporate relationship between CVI SGP Acquisition Trust and CVI SGP-CO Acquisition Trust. (Tukin Dep. 75:5–15.)

While the FDCPA defines a creditor as any person to whom a debt is owed, 15 U.S.C. § 1692a(4), the Seventh Circuit has established that the actual identity of the current creditor is not dispositive; instead, the relevant question is "whether the letter[] identified the then-current creditor clearly enough that an unsophisticated consumer could identify it without guesswork." *Steffek v. Client Servs., Inc.*, 948 F.3d 761, 763 (7th Cir 2020) (citation omitted); *see also Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 814–15 (7th Cir. 2016) (noting that FDCPA suits fall into three categories, including "cases involving statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer, for which plaintiffs must produce extrinsic evidence to prove that unsophisticated consumers find the statements to be so"). Even if Tukin's argument that an unsophisticated consumer would be misled or deceived by Halsted's letter and privacy notice seems tenuous, the Court never decided the merits of this claim. Consequently, the Court does not find that Attorney Barshay's action in continuing to pursue the § 1692e claim unreasonably and vexatiously multiplied the proceedings, especially considering that the 2019 bill of sale did not conclusively show that CVI SGP Acquisition Trust was Tukin's creditor in 2019 and 2020.

With respect to Count II, Halsted argues that Attorney Barshay persisted with his false assertions that Halsted's initial communication to Tukin was the January 2020 letter and that Halsted failed to send the statutorily required notices in its initial communication. Halsted contends that it provided Tukin and Attorney Barshay with copies of Halsted's September 2019 letter addressed to Tukin, which contains the requisite notices. (*E.g.*, Halsted's Initial Disclosures at 41.) Additionally, Halsted references Tukin's deposition testimony, in which he admitted that

11

it was possible he received the September 2019 letter but forgot about it. (Tukin Dep. 55:7–9.)

Tukin also testified that if Halsted said the letter was deposited in the mail, he would have no

reason to believe that the statement was false. (*Id.* 55:2–6.) Moreover, Halsted emphasizes the

language in § 1692g of the FDCPA, which focuses on whether the debt collector sends written

notice, rather than whether the consumer receives such notice. *See* 15 U.S.C. § 1692g(a)

(requiring that "within five days after the initial communication with a consumer in connection

with the collection of any debt, a debt collector shall, unless the following information is

contained in the initial communication or the consumer has paid the debt, send the consumer a

written notice containing" that information). In short, Halsted asserts that the documents and

Tukin's deposition testimony belie Tukin's claim that Halsted never sent him the September

2019 letter.

But again, the Court finds that Halsted's copy of the September 2019 letter did not

conclusively establish that Halsted sent Tukin the letter, so as to establish a misrepresentation

justifying sanctions. Halsted's production of the September 2019 letter certainly supports

Halsted's claim that it sent the letter, but the letter by itself does not prove that Halsted actually

mailed it. And while Tukin acknowledged that he would have no basis to conclude that Halsted's

testimony that it sent him the September 2019 letter was false, Halsted did not present such

testimony until January 2022. That is when Halsted offered the declaration of Manraj Bains,

Halsted's executive director, in which she asserts that Halsted arranged for the mailing of the

September 2019 letter to Tukin via letter vendor and that there was no record of the U.S. Postal

Service ever returning the letter. (Def.'s Mot. for Summ. J., Ex. 3, Bains Decl. at 1–2, Dkt. No.

35-3.) While Tukin acknowledged the possibility he received the September 2019 letter but

forgot about it, Halsted ignores Tukin's testimony where he unequivocally stated that he had not

received any other letter from Halsted besides the January 2020 letter. (Tukin's Dep. 34:11–13.) Indeed, Tukin testified that he had never seen the September 2019 letter until a few weeks before his deposition. (*Id.* 55:5–9.)

In a nutshell, Halsted's evidence was not so overwhelming at the time Attorney Barshay filed the FAC that it was sanctionable for him to continue to pursue Tukin's § 1692g claim, particularly considering his client's insistence that he had not received the September 2019 letter and the lack of documentation or testimony in the record that Halsted mailed the letter. *Cf. Beler v. Blatt, Hasenmiller, Leibsker & Moore*, *LLC*, No. 05-3059, 2006 WL 2051271, at *2, *4 (C.D. Ill. July 20, 2006) (declining to impose sanctions in an FDCPA action where the plaintiff told her attorney that she did not receive a notification letter and the attorney filed an amended complaint with this allegation—despite the fact that the defendant had provided the plaintiff with a copy of its notification letter—because the defendant failed to provide documentation that the proffered letter had actually been mailed to the plaintiff).

### B. Standing

Next, Halsted claims that sanctions are appropriate because Attorney Barshay continued to assert that Tukin had standing even after his deposition testimony made clear that he did not. In support, Halsted points to the Court's summary judgment ruling, where it held that Tukin could not establish that he suffered a concrete harm sufficient to satisfy the standing requirement for any of his FDCPA claims.

By the time Tukin filed the FAC in September 2021, the Seventh Circuit had issued a series of decisions regarding the requirements for the injury-in-fact element of standing in the FDCPA context. Specifically, as the Seventh Circuit explained, an FDCPA plaintiff must do more than allege a mere statutory violation, "he must allege (and later establish) that the statutory

violation harmed him or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (internal quotation marks omitted)). The mere fact that a FDCPA plaintiff was confused by the allegedly violative communications is not enough to demonstrate a concrete harm—"the state of confusion is not itself an injury." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020); *see also Markakos v. Medicredit, Inc.*, 997 F.3d 778, 781 (7th Cir. 2021) (noting that a plaintiff's confusion and aggravation from a debt collection letter is not an injury in fact). But confusion may lead to an injury if a plaintiff acts on their confusion to their detriment, such as by paying debts that are not owed or paying debts with lower interest rates before those with higher interest rates. *Id.* That said, that a plaintiff's confusion or concern from a debt collection letter caused him to seek legal counsel is insufficient to constitute a concrete injury. *Id.* at 1069. Further, a plaintiff's anxiety, embarrassment, or stress from an allegedly violative communication are not concrete injuries. *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021). Although stress accompanied by physical manifestations can amount to a concrete harm. *See Pennell v. Glob. Tr. Mgmt. LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) ("Nor does stress by itself with no physical manifestations and no qualified medical diagnosis amount to a concrete harm.").

In Tukin's deposition, he testified that he could not identify a financial loss that he suffered because of Halsted's conduct, that he lacked documentation to support any mental anguish damages, that he did not rely upon any statement made by Halsted, that Halsted's debt collection letter did not affect his decision to pay or not pay his debt, that he was concerned with the risk of potential personal and professional harm resulting from Halsted sharing his private

information with other entities or that information leaking, and that he did not know if Halsted actually engaged in such sharing of his information. (Tukin Dep. 14:15–22; 77:17–20; 81:10–82:21; 83:13–22; 97:8–98:19; 104:17–105:22.) Additionally, Tukin testified that he experienced mental anguish due to his constant thoughts—even while he tried to sleep—about potentially losing his job, as he assumed that Halsted shared his private information. (*Id.* at 106:21–108:5.) Then, in the FAC, Tukin alleged that Halsted's conduct caused him concern, confusion, emotional distress, anxiety, worry, and sleeplessness—all of which led him to seek legal counsel. (FAC ¶¶ 73, 79, 85, 90.)

While Seventh Circuit precedent and Tukin's testimony that he did not rely on Halsted's representations foreclosed any assertion that Tukin's concern and confusion constituted a concrete harm, Tukin's assertion that he suffered mental anguish resulting in sleeplessness left Attorney Barshay a small window to make a colorable argument regarding standing. As Tukin notes, some courts in this District have interpreted *Pennell* to allow a finding that physical manifestations of emotional distress, such as loss of sleep, can be concrete injuries under the FDCPA. *See, e.g.*, *Mladenov v. R1 RCM, Inc.*, No. 21-CV-01509, 2022 WL 5116450, at *3 (N.D. Ill. Oct. 4, 2022) ("[Plaintiff's] allegations of loss of sleep and appetite fall within this category of injury, which while slight, rises to the level of concrete injury under the FDCPA."); *Billups v. I.C. Sys., Inc.*, No. 21 C 1018, 2022 WL 3684572, at *5 (N.D. Ill. Aug. 25, 2022) (finding that the plaintiff's allegations of headaches and loss of sleep were sufficient to establish standing); *see also Gilbert v. TrueAccord Corp.*, 608 F. Supp. 3d 656, 664 (N.D. Ill. 2022) (concluding that the plaintiff's evidence that she was so angered by the debt collector's email that she began to shake was sufficient to establish a concrete injury).

15

Although the Court previously noted that Tukin identified no other injury—besides his confusion—caused by Halsted's conduct, that conclusion was based on Tukin's failure to dispute Halsted's statement of facts accompanying its summary judgment motion. (*See* 7/12/2022 Order-Statement at 1, 3.) Halsted, however, excludes that context to the Court's ruling. The Court's prior conclusion at the summary judgment stage is immaterial to the present issue, which is whether it was unreasonable for Attorney Barshay to continue to claim that Tukin had standing after Tukin's deposition testimony. Tukin's statements about mental anguish and other cases from this District provided Barshay a narrow path to do so.

Furthermore, Halsted disregards that Tukin's § 1692c claim in Count IV gave Barshay another colorable argument for standing. Subject to statutorily provided exceptions, § 1692c of the FDCPA prohibits debt collectors from communicating with third parties "in connection with the collection of any debt." 15 U.S.C. § 1692c(b). In Count IV, Tukin claimed that Halsted violated § 1692c by communicating with a letter vendor regarding his debt. (FAC ¶ 89.) As the Court noted in its summary judgment ruling, courts within this District are divided over whether the use of a third-party letter vendor is sufficient to support a concrete injury conferring standing. *See Navarroli v. Medicredit, Inc.*, No. 21-CV-6203, 2022 WL 4465840, at *3 (N.D. Ill. Sept. 26, 2022) (collecting cases); *compare Keller v. Northstar Location Servs.*, No. 21-cv-3389, 2021 WL 3709183, at *2 (N.D. Ill. Aug. 20, 2021) (holding that a debt collector's disclosure of personal information regarding a plaintiff's debt to a letter vendor constituted a concrete harm), *with Quaglia v. NS193, LLC,* No. 21 C 3252, 2021 WL 7179621, at *3 (N.D. Ill. Oct. 12, 2021) (finding that a debt collector's disclosure of private information regarding a consumer's debt to a mailing vendor was insufficient to confer standing). The Court declined to decide whether the letter-vendor theory of liability provided Tukin an adequate basis for standing since Tukin failed

16

to provide evidence that his information was disclosed to the letter vendor, FocusOne. (7/12/2022 Order-Statement at 3.) For instance, Tukin did not dispute that FocusOne does not analyze or manipulate the data and letters transmitted to it for printing, or that the data employed to print and mail those letters always remained secure and encrypted while in FocusOne's possession. (*Id.*)

The context and timing of Halsted's summary judgment motion matters. Halsted did not introduce the declaration of James Nesbitt, FocusOne's Chief Executive Officer, into the record until its summary judgment motion in January 2022. (*See* Def.'s Mot. for Summ. J., Ex. 2, Nesbitt Decl. at 1–2, Dkt. No. 35-2.) It was Nesbitt who stated that FocusOne does not analyze, alter, or manipulate the data and letters it receives for printing, that the data FocusOne received from Halsted remained encrypted while in FocusOne's possession, and that no person at FocusOne ever had access to the unencrypted data. (*Id.* at 1.) Without such information until January 2022, it was not unreasonable for Barshay to assert in the FAC that Tukin had standing for Count IV due to the disclosure of his private information to a third party. As such, sanctions are inappropriate.

### C.    Canceled Deposition

Finally, Halsted argues that sanctions are warranted because Attorney Barshay canceled Halsted's scheduled deposition with less than a day's notice and no explanation, and then never attempted to reschedule the deposition. Attorney Barshay, in turn, asserts that he had to cancel the deposition because of a family matter and that he never rescheduled because Attorney Newburger demanded that Tukin first reimburse Halsted for fees and expenses incurred from the cancellation. (Pl.'s Resp. Br. at ¶ 38, Dkt. No. 51.) Attorney Barshay does not dispute that he never told Halsted his reasons for the cancellation or rescheduled the deposition. (*Id.*)

While it is certainly unprofessional and inconsiderate to cancel a deposition at the last minute with no explanation, Halsted has waived this argument as a basis for § 1927 sanctions. Generally, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (citation omitted). In its opening brief, Halsted merely characterized Barshay's conduct as an "abusive discovery tactic" and as evidence of Barshay's bad faith. (DMS at ¶ 15, Dkt. No. 45.) In his response brief, Barshay points out that Halsted never identified any authority supporting its argument that an attorney's cancellation of a deposition merits sanctions. (Pl.'s Resp. Br. at ¶ 40.) Yet in Halsted's reply brief, Halsted fails to mention the cancelled deposition, let alone address Barshay's argument about the lack of cited authority. In essence, Halsted appears to have abandoned its claim. Consequently, the Court need not consider Halsted's argument.[4]

Halsted's motion for § 1927 sanctions against Attorney Barshay is therefore denied.

### III.   Tukin's Motions for § 1927 and Rule 11 Sanctions

The Court evaluates Tukin's motions—the first under § 1927 against Attorney Newburger and the second under Rule 11 against Attorney Newburger and Halsted—together, since Tukin raises similar arguments in both motions. Simply put, Tukin seeks sanctions against Attorney Newburger and Halsted on the ground that Halsted's own motion for § 1927 sanctions is legally and factually baseless.

The legal standard for § 1927 sanctions is summarized above. With respect to Rule 11, sanctions are appropriate "if a lawsuit is not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing

---

[4] Halsted, in its response to Tukin's motions for sanctions, cited three cases in which courts awarded sanctions for a party's last-minute cancellation of depositions. As the Court will discuss later, those cases are inapposite.

law." *Cuna Mut. Ins. Soc'y v. Off. & Prof. Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 11(b). The Court engages in an objective inquiry to determine "whether the party or his counsel should have known that his position is groundless." *Cuna Mut.*, 443 F.3d at 560 (internal quotation marks and citation omitted). Rule 11 requires attorneys to conduct a "reasonable inquiry into the facts." *Ins. Benefit Adm'rs, Inc. v. Martin*, 871 F.2d 1354, 1359 (7th Cir. 1989). Further, a court may impose Rule 11 sanctions on a party or that party's attorney if an improper purpose motivated the filing of a document or pleading. *Johnson v. Cherry*, 422 F.3d 540, 548 (7th Cir. 2005); *see* Fed. R. Civ. P. 11(b)–(c) (describing improper purposes as "to harass, cause unnecessary delay, or needlessly increase the cost of litigation").

### A.    Alleged "Suspect Evidence"

Tukin first contends that Halsted and Attorney Newburger submitted "suspect evidence" to support Halsted's motion for sanctions and failed to address issues with the evidence after Attorney Barshay notified them.

With respect to Halsted's claim that Attorney Barshay falsely asserted that Halsted misnamed Tukin's creditor, Tukin accuses Halsted and Attorney Newburger of doctoring the notification file attached to the bill of sale to remove references to Resurgent Capital Services. Tukin points to differences in the names of the electronic file of transferred accounts in the exhibit presented with Halsted's answer versus those provided with Halsted's initial disclosures. Indeed, Tukin is correct that Halsted's reply brief in support of its motion for sanctions did not address or explain the variation in names of the electronic files, but the Court cannot join in Tukin's leap to the conclusion that Halsted and Attorney Newburger purposefully manipulated the files. As noted above, Halsted has offered testimony from Heatherly, a paralegal at Resurgent

19

Capital Services, explaining that the file names for the notification file were used interchangeably and that Resurgent appeared in the file designation because it was the servicer of CVI SGP Acquisition Trust's debt portfolio. (Heatherly Decl. ¶¶ 7, 13.) The Court sees no basis to conclude that Halsted or Newburger doctored the evidence or that Halsted's failure to respond to Tukin's concerns warrants sanctions—especially in light of Heatherly's plausible explanation and Tukin's lack of evidence to rebut Heatherly's assertions.

Similarly, Tukin argues that Attorney Newburger's submission of his billing history with Halsted's motion for sanctions was suspect evidence that Halsted and Attorney Newburger failed to address. As part of Halsted's request for attorneys' fees and costs, Attorney Newburger submitted a record of expenses his law firm charged after Tukin's deposition. (DMS, Ex. F, Newburger's Billing Records, Dkt. No. 45-7.) The invoice lists both Halsted and Resurgent Capital Services in the header. (*Id.* at 2.) In Tukin's response to Halsted's motion for sanctions, Tukin emphasizes his view that this fact undermines Halsted's assertion that CVI SGP Acquisition Trust (rather than Resurgent Capital Services) owned Tukin's debt. But again, Halsted did not initially explain why Attorney Newburger's billing record referenced Resurgent Capital Services. Glass, Halsted's general counsel, states that Resurgent Capital Services— which provided information to Halsted as the servicer of CVI SGP Acquisition Trust's debt portfolio—agreed to indemnify Halsted for Attorney Newburger's attorney's fees. (Glass Decl. ¶ 10.) This is a plausible explanation. And the Court does not view Halsted's failure to provide this clarification until its response to Tukin's motion for sanctions as sanctionable conduct.

### B.     Alleged Mischaracterization of Tukin's Deposition Testimony

Second, Tukin contends that Halsted and Attorney Newburger selectively quoted from Tukin's deposition and omitted critical parts of the testimony that refuted Halsted's argument that Attorney Barshay made repeated misrepresentations to the Court.

As described above, Halsted claimed that Attorney Barshay continued to assert falsely that Halsted misnamed Tukin's creditor and that Halsted failed to send Tukin statutorily required notices, despite Halsted providing Attorney Barshay with a copy of the September 2019 letter and 2019 bill of sale. To bolster its argument, Halsted cited parts of Tukin's deposition testimony, in which Tukin conceded that it was possible he received the September 2019 letter but forgot about it. Ultimately, the Court rejected Halsted's argument that Attorney Barshay falsely asserted that Halsted never sent the September 2019 letter. Relevant here, the Court concluded that Halsted's production of a copy of the September 2019 letter did not conclusively establish that it mailed the letter to Tukin. And the Court noted that Halsted's excerpts of Tukin's deposition testimony ignored other parts of Tukin's testimony, such as where he stated that the January 2020 letter was the first letter he received from Halsted and that he had not seen the September 2019 letter until a few weeks before his deposition. The Court agrees that Halsted selectively quoted the portions of Tukin's deposition testimony that strengthened its argument.

However, Tukin misunderstands the core of Halsted's claim that Attorney Barshay misrepresented that Halsted never sent Tukin the September 2019 letter. Halsted's real issue is that § 1692g(a) of the FDCPA focuses on whether a debt collector sent the consumer the required written notices, and Attorney Barshay persisted with Tukin's § 1692g claim without any further discovery to determine if Halsted actually sent the letter—even though Halsted provided him with a copy of the September 2019 letter. A court may award § 1927 sanctions if an attorney

"pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Grp.*, 435 F.3d at 720. In light of this standard, the Court cannot conclude that Halsted's request for sanctions for Barshay's continued pursuit of the § 1692g claim, without additional discovery to rebut Halsted's evidence, was baseless or unreasonable.

### C.    Insufficient Response to Caselaw

Third, Tukin asserts that sanctions are warranted because Halsted and Attorney Newburger failed to respond to Tukin's caselaw in his response to Halsted's motion for sanctions.

With respect to Halsted's arguments about the merits of Tukin's FDCPA claims, Tukin argues that Halsted and Attorney Newburger failed to respond to district court cases from this Circuit that he identified in his response brief. Specifically, he contends that those cases clearly showed that Halsted's motion for sanctions was meritless. The three cases are *Thomas ex rel. Phillips*, 2021 WL 4439417, *Infante v. Portfolio Recovery Associates., LLC*, No. 15 C 10596, 2017 WL 2445133 (N.D. Ill. June 6, 2017), and *Beler*, 2006 WL 2051271. Those cases represent situations where district courts refused to impose § 1927 sanctions against attorneys who continued to pursue their client's claims despite receiving contradictory evidence that undermined their client's allegations. *See Thomas*, 2021 WL 4439417, at *11; *Infante*, 2017 WL 2445133, at *3–4; *Beler*, 2006 WL 2051271, at *2, *4. But as district court rulings, none of them were controlling precedent. *See Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 457 (7th Cir. 2005) ("[A] district court decision does not have stare decisis effect; it is not a precedent." (citations omitted)). As a result, the Court declines to award sanctions against Newburger and Halsted on that basis.

22

Regarding the standing issue, Tukin claims that Attorney Newburger and Halsted failed to acknowledge Seventh Circuit precedent on standing in FDCPA cases. In particular, Tukin contends that Halsted's argument that sanctions against Attorney Barshay were appropriate due to his false contention that Tukin had standing to bring his FDCPA claims is frivolous. For instance, Tukin asserts that Halsted and Attorney Newburger never acknowledged caselaw supporting a plausible argument as to Tukin's standing for Count IV. Further, Tukin argues that Attorney Newburger and Halsted ignored cases from courts in this District holding that emotional injuries may confer standing for FDCPA claims.

While Halsted may have disregarded cases that provided Barshay with a plausible, albeit weak, basis to argue that Tukin had standing, that did not render Halsted's motion frivolous. Tukin alleged several injuries from Halsted's conduct, such as concern, confusion, emotional distress, anxiety, worry, and sleeplessness—all of which led him to seek legal counsel. (FAC ¶¶ 73, 79, 85, 90.) But as discussed above, Seventh Circuit precedent foreclosed many of Tukin's alleged injuries. Consequently, it was not baseless for Halsted to argue that some of Tukin's arguments for standing were unreasonable considering Seventh Circuit precedent to the contrary.

### D. Cancelled Deposition Argument

Fourth, Tukin claims that Halsted's argument that Attorney Barshay's cancellation of its deposition warrants sanctions is also frivolous, as evidenced by Halsted's failure to provide any authority to support it. On the other hand, Halsted argues that it cited no authority in its briefing because it is obvious that cancelling a deposition at the last minute and without explanation is unreasonable and vexatious. Then, in its response brief to Tukin's motions for sanctions, Halsted cites three cases to demonstrate that its request for sanctions for the cancelled deposition was not frivolous and that caselaw supports its request. Those cases, while they do support the broad (and

23

correct) proposition that a party's cancelled deposition may lead to sanctions under appropriate circumstances, are inapposite here—either because the attorneys engaged in more egregious conduct or the court imposed sanctions under different legal provisions. In short, the Court does not find the request for sanctions frivolous and certainly that request does not warrant sanctions in response.

Thus, Tukin's motions for § 1927 sanctions against Attorney Newburger and Rule 11 sanctions against Halsted and Newburger are denied.

## CONCLUSION

For the foregoing reasons, Halsted's motion for sanctions pursuant to 28 U.S.C. § 1927 (Dkt. No. 45) and Tukin's motions for sanctions pursuant to Federal Rule of Civil Procedure 11 (Dkt. No. 58) and 28 U.S.C. § 1927 (Dkt. Nos. 60) are denied.

ENTERED:

Dated: March 31, 2024

_____
Andrea R. Wood
United States District Judge